UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10254-RWZ

UNITED STATES OF AMERICA

v.

FERNANDO SALAS SICAIROS

ORDER ON PRETRIAL MOTIONS

August 9, 2006

ZOBEL, D.J.

Defendant stands accused on one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine in violation of 18 U.S.C. §846. He has moved to dismiss the indictment, to sever his trial from that of his co-defendants, and to suppress certain statements and evidence. The court held an evidentiary hearing directed primarily to the motions to suppress, but, to the extent the evidence adduced is relevant to the other motions, I shall rely on it in deciding them.

I.  Findings of Fact

The indictment charges a multi-state conspiracy, Massachusetts, Rhode Island, and Southern California, to distribute cocaine. One of the principals was defendant Luis Vizcarra who resided at 955 Caminito Estrella ("955") in Chula Vista, California. Through a confidential witness ("CW"), federal agents and local police officers who were members of a Drug Task Force received both historical information about Vizcarra and other members of the conspiracy and details of then current activities of the group.

Defendant elicited from one of the Task Force agents, Vincent Chambers, that CW had some 26 warrants against him at that time, used cocaine during the investigation, and may have stolen tools from Home Depot while working for and being paid by the government. Nonetheless, Chambers deemed him to be a reliable source. Given the evidence about CW's cross country deliveries of cocaine to defendant Jorge Tirado in Massachusetts and of the money therefor to Vizcarra in California, which checked out and in one instance was directed by the agents, plus his several personal contacts with Vizcarra which were recorded, I find the agents' trust in him fully justified.

Eduardo Dominguez, Jr. is a Boston Police Detective and a member of the Task Force assigned to investigate the drug organization. He testified that in September 2000, CW was staying at Vizcarra's house. While there CW learned, and so informed the agents, that Umberto Madrano, the supplier to the group, was expected to arrive some time on September 11, and that CW was to leave for Massachusetts with multiple kilos of cocaine the next day. CW also stated that he had never been allowed to witness a delivery. In response to CW's information, the agents set up surveillance of Vizcarra's house and, at some point, applied for and received a search warrant for those premises. Nothing occurred on September 11, but on the 13th just before 4:00 p.m. the agents saw Vizcarra, another defendant, Alejandro Garciglia, and CW leave the residence in a white truck. The agents followed the trio to a shopping mall where CW got out and the other two men returned to 955. CW called the agents and told them that Vizcarra said CW had to be out of the house because Vizcarra and Garciglia expected a delivery and had work to do.

Thereafter, Dominguez testified, the surveillance team saw the garage door of 955 open, a white Toyota arrived and parked next to the garage, a person got out of the car, opened the trunk, took out a box and placed it inside the garage. The Toyota left but was continually observed by airplane and followed by one unmarked car and two marked cruisers. Meanwhile, back at the ranch, the agents executed the search warrant.

The Toyota drove on Route 805 toward the Mexican border. When it left the main highway the agents signaled the car to pull over. Twice it appeared to comply only to pull out after having apparently stopped. On the third attempt the agents boxed in the Toyota which then could not escape. Dominguez approached the driver and asked to speak with him. The driver, defendant Fernando Salas-Sicairos, agreed and Dominguez asked him where he was from and where he was going. Defendant said that he and his brother, the passenger, had come from Mexico to look at some boats, that defendant had wanted to stop at a Costco, but that his brother did not. When asked why he had left the highway, defendant responded that he wanted to find a grocery store. When Dominguez told defendant that his story made no sense, the defendant rolled his eyes. Dominguez asked defendant and his brother to get out of the car. Just then he received word that the search of 955 had yielded three kilograms of cocaine hidden in the bathroom. He placed defendant and his brother under arrest and read them their Miranda rights in Spanish. Although in his memorandum in support of the motions to suppress defendant asserts that the exchange recited above occurred after the arrest and before any Miranda warning, he provides no evidence. Defendant

3

at one point pulled Dominguez aside and told him that his brother had nothing to do with "it", a statement he repeated after he and his brother had been transported back to 955.

In his memorandum, defendant also asserts that the agents and uniformed local police officers who effected the stop of the Toyota had their guns drawn and trained on both occupants. However, the only evidence is contrary. Dominguez testified that no one had his gun drawn, that no one had raised his voice and that both defendant and his brother were cool and calm throughout. I accept Dominguez' testimony not only because it is uncontroverted, but also because I find the witness to be credible. Similarly, defendant's claim that he was handcuffed behind his back in a painful manner is wholly without evidentiary support.

II.     Motion to Suppress (#37)

Defendant contends that his arrest was illegal and that any statements and evidence obtained as a result must be suppressed.

The parties agree that stopping an automobile and detaining the occupants constitutes a seizure within the meaning of the Fourth Amendment. They also agree, however, that police officers may detain a person if they have a reasonable, articulable suspicion, based on objective facts, that the person has engaged in, or is about to engage in, criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968). This requirement protects against intrusions upon constitutionally guaranteed rights based on nothing more substantial than "inarticulate hunches." Id. at 22. The totality of the circumstances must be taken into account in determining whether the police possessed a sufficiently reasonable, articulable suspicion to stop a person. United States v.

4

Cortez, 449 U.S. 411, 417 (1981). In this case, the officers who stopped the white Toyota were not acting on a "hunch," but rather they had ample objective facts to support their decision.

First, the stop of defendant's car was clearly justified as the agents had a reasonable suspicion of wrongdoing. They knew from CW that Vizcarra and Garciglia expected a delivery of cocaine at 955 on the day in question. They knew that CW had never been allowed to see a delivery and Vizcarra and Garciglia had, on this occasion, removed CW from the house to a mall. They had observed the return from the mall of Vizcarra and Garciglia; within a short time thereafter they had noted the opening of the garage doors, the arrival of a white Toyota, albeit with unknown driver and passenger, and the removal of a box from the trunk of the car into the garage. They also had sufficient information of distribution of cocaine at 955 to have previously secured a search warrant of the premises. Given this constellation of facts, the agents had ample reason to suspect defendant, the driver of the white Toyota, of having delivered drugs to 955. The investigative stop was therefore proper.

Second, defendant objects to the manner in which the stop was effected and argues that it was a de facto arrest. In his memorandum he cites the fact that three cars, two marked and one unmarked, were used and that they effectively surrounded him. He also mentions a show of guns and the use of handcuffs. As to the latter, the evidence does not support a finding of drawn guns, and the handcuffs followed the actual arrest, which was accompanied by Miranda warnings. Perhaps the number of police cars was intimidating, but the manner in which they were used was, given the circumstances, neither overbearing nor improper. Defendant twice engaged in evasive

maneuvers, and the actions of the police were thus reasonable in response to the circumstances. Dominguez' questions about the occupants' identity, where they had been and where they were going were routine and proper. See Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (noting in a traffic stop that "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.").

After the agents received information that cocaine had been found at 955 they unquestionably arrested defendant. Dominguez told him he was under arrest, handcuffed him, and read him the Miranda warning. Any statements defendant made thereafter may be used against him. It is not clear what evidence, other than his statements, defendant seeks to suppress.

The motions to suppress statements by defendant made in the course of the stop and arrest are denied.

III.     Motion to Sever (#42)

Defendant suggests that severance will allow him to call his co-defendants Vizcarra and Garciglia to testify on his behalf. He further asserts that they would say that defendant did not deliver cocaine to 955 and that he was not involved in a conspiracy to deliver cocaine to Massachusetts. First, the conspiracy charged is not so limited; it is a conspiracy to distribute cocaine. Second, defendant's desire for testimony from his co-defendants does not translate into their willingness to testify, particularly since they would testify without a grant of immunity. Finally, severance is particularly inappropriate where the charge is concerted illegal activity.

The motion is denied.

IV.     Motion to Dismiss under Rule 29 (#40)

As defendant recognizes the motion is premature, it is denied without prejudice to its renewal at the appropriate time.

V.      Motion to Dismiss Due to Erroneous Grand Jury Instructions (#39)

The motion is denied because it is without any support in the record.

|  |  |
|---|---|
| 08/09/06 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |